[No. 21145. Department Two. September 14, 1928.]

SOUND INDUSTRIAL LOAN COMPANY et al., Respondents, v. FRANK ALLYN, INCORPORATED et al., Appellants.[1]

D. E. Twitchell and Arthur H. Callahan, for appellants.

Roberts & Skeel and N. A. Pearson, for respondents.

FULLERTON, C. J.—This is an appeal from a judgment in the sum of nine hundred dollars, rendered in favor of the respondents and against the appellants for the value of a certain automobile, which the court

[1]Reported in 270 Pac. 295.

found to be the property of the respondents, and which it further found the appellants had taken and converted to their own use.

The automobile in question was originally the property of the Oakland Six Co., a dealer in automobiles, doing business at San Diego, California. On May 28, 1925, that company sold the automobile to one F. E. Durel under a contract of conditional sale. The contract recited a balance due on the purchase of the automobile of $1,254.96, and provided for its payment in eighteen monthly instalments of $69.72 each. The contract contained a provision to the effect that the automobile should not be removed by the purchaser from the county of San Diego, state of California, and provided for a forfeiture of the contract if it should be so removed. There were, also, in the contract, the usual provisions for a forfeiture in the case of nonpayment of the instalments due, and it recited somewhat minutely the remedies of the seller if forfeiture were made, some of which would render it invalid as a conditional sale if tested by the laws of this state.

On the day the contract was executed, the seller assigned it, together with all its right, title and interest in the automobile, to the San Diego Finance Corporation, a corporation organized and existing under the laws of the state of California.

The purchaser of the automobile removed it from the state of California to the state of Utah, in the fall of the year 1925. Up to that time, he had kept up the instalment payments, and from that place made as many as three thereon. These payments were made directly to the purchaser of the contract, and elsewhere in the record it is made clear that such purchaser had knowledge that the automobile had been removed from the state of California. It, however, took no steps looking to a forfeiture of the contract

of sale because of this breach of its condition, but seemingly acquiesced in the removal.

In the early spring following, the purchaser of the automobile brought it to Seattle, in the state of Washington. He met with some difficulty while in the state of Utah, which necessitated his return to that state shortly after his arrival in Seattle. He did not take the automobile back with him, but disposed of his interest in it to the respondent Adeline Jansen. Jansen at that time knew of the contract of purchase under which Durel held the automobile, and knew that there was an unpaid balance due on the contract. It seems, too, that an instalment payment was made on the contract after the automobile was brought into this state.

It was the purpose of Jansen to pay the California company the balance due upon the contract. The monthly payments were larger, however, than she felt she could pay, and she sought to refinance the deal through another source. To that end, she went to one Harmon, who was a local dealer in used cars, doing business in the city of Seattle, and requested him to pay the balance due to the California company, take title to the car himself and resell it to her on a conditional sales contract at a reduced rate of payment. Harmon, after ascertaining the amount due on the contract, agreed to comply with the request. Jansen then gave Harmon a bill of sale of the automobile, transferring to him her interest therein, and took from him as the owner of the automobile a contract of conditional sale, by the terms of which she agreed to pay a somewhat larger sum as the purchase price of the automobile than was due to the California company, but at a lessened rate in the monthly payments; the payments being reduced from $69.72 per month to $45 per month.

Harmon, immediately after procuring the contract of conditional sale, assigned it to the Sound Industrial Loan Company, the coplaintiff of Jansen in this action. Harmon, at the time the contract of conditional sale was executed, assured Jansen that he had paid the balance due to the California company, and she, relying on the truth of his statement, paid the instalments as they became due on the contract until five of such instalments had been paid. At that time, the California company caused the automobile to be taken from her possession and shipped out of the state. The company, on seizing the car, acted through the agency of the appellants, and they being within the jurisdiction of the court, were sued as the sole defendants.

The evidence at the trial disclosed that Harmon never paid the California company the balance due upon Durel's contract with it. At about the time he began his negotiations with Jansen, he wired the company to ascertain the amount due thereon, and the discount that would be allowed for payment in cash. This information was furnished him under date of March 26, 1926. On March 31, 1926, he wrote the California company to the effect that he was negotiating a deal on the automobile, but that the party with whom he was dealing was out of the city and would be out of the city for two or three days, but that, upon the party's return, he would close the deal and mail to it a check in full.

On April 20, 1926, the company wrote him inquiring as to the cause of the delay in settlement, saying that the contract was two months in arrears, and that it would have to report it to the insurance company by April 30. To this letter Harmon replied under date of May 1, saying his delay in answering was caused by the fact that he had been out of the city. He expressed surprise that it had not received payment,

saying that a check in full had been mailed it on April 14 and that, if it had not been received, he would stop payment upon it and mail a new one. The California company, under date of May 4, wrote him that the check had not been received, and urged him to forward another at once, as the exigencies there demanded immediate action. Harmon did not reply to this letter, and on May 25 the company wired him demanding an explanation. To this telegram he replied on May 26 that he had just returned from a vacation and was mailing the money on that day.

Under date of June 2, the company again wired him, saying that the check had not been received and requesting him to wire the cause of the delay. To this request Harmon made no reply, and nothing further seemed to have passed between them respecting the matter. The automobile was seized by the California company sometime in July, 1926, the precise date of which is not given, but it was some four months after it began its negotiations with Harmon. Neither of the respondents had any knowledge that Harmon had not paid the California company for the automobile until after its seizure by direction of that company, and knew nothing until after that time of the negotiations between it and Harmon. Harmon became involved in other financial transactions, abandoned his business and absconded sometime in July, 1926.

On the trial of the action, it was stipulated by the parties that the laws of the state of California do not require the recording of a contract of conditional sale, and that the contract between Durel and the California company was a valid and enforcible contract under the laws of that state. We have heretofore held, following the general rule in that respect, that a contract of conditional sale of chattel property, executed in another state and valid and enforcible in

the state where executed, is valid and enforcible against the property when brought within this state, although the contract is not recorded in this state and although the property may be in the hands of an innocent purchaser for value; and this, notwithstanding our laws make it an essential to the validity of a like contract executed in the state on property within the state, that it be recorded. *Rodecker v. Jannah,* 125 Wash. 137, 215 Pac. 364.

The cited case, and the cases upon which it relies, however, note an exception to the rule as stated. If the contract of sale is made in one jurisdiction, and consent is given to the removal of the property contracted to be sold into another jurisdiction, the contract is invalid as to the creditors of the vendee and purchasers of the property in good faith of the latter jurisdiction, unless its laws relative to such contracts have been complied with; this, on the principle that it is against the policy of the state to permit its laws to be knowingly violated. It must follow, we think, from the same principle, that, if property sold under a contract of conditional sale in one jurisdiction is removed to another without the consent of the seller, and the seller, after learning of its whereabouts, delays unreasonably to comply with the laws of the latter jurisdiction, or delays unreasonably in asserting his right to the possession of the property, the contract becomes invalid as against the creditors of the vendee in the contract and subsequent purchasers of the property from the vendee.

The trial court held the contract here in question invalid on the latter principle. It held that the vendor delayed unreasonably in attempting to enforce its contract, thereby permitting the respondents to place themselves in a situation where they will suffer a financial loss which they would not have suffered had

the vendor acted diligently. The evidence which led the court to its conclusion we have set out somewhat in detail. It is sufficient to say, we think, without further comment, that it justifies the conclusion reached.

The judgment will stand affirmed.

BEALS, HOLCOMB, ASKREN, and PARKER, JJ., concur.