B & G BUDGET PLAN OF PORTLAND, OREGON, Appellant,

v.

James R. YOUNG, Trustee in Bankruptcy for Leo J. Foy, whose wife is Janet C. (Caroline) Foy, Appellee.

No. 20589.

United States Court of Appeals
Ninth Circuit.

Nov. 9, 1966.

George S. Lundin, of Geraghty, Lundin & Geraghty, Seattle, Wash., for appellant.

Eugene J. Craig, Seattle, Wash., for appellee.

Before BARNES, HAMLEY and JERTBERG, Circuit Judges.

JERTBERG, Circuit Judge.

This is a review of an order in bankruptcy wherein a contract of conditional sale was declared null and void as to the bankruptcy trustee, appellee herein, because the conditional vendor's assignee, appellant herein, had failed to file in Washington any document pertaining to the contract in accordance with the law of the state of Washington, after the subject matter of the contract had been removed to Washington. We affirm.

On August 2, 1963, in Portland, Oregon, Braley and Graham sold to one Leo J. Foy a 1963 Buick automobile on a retail installment contract. Subsequently, Braley and Graham assigned their interest in the contract to B & G Budget Plan of Portland. The contract was validly recorded in Oregon.

At the time of sale, the bankrupt, Foy, was a resident of Portland. The car was registered in Oregon, and bankrupt made periodic payments from his Oregon address. Then, in July, 1964, bankrupt moved with all his family and posses-

sions, including the automobile, to Auburn, King County, Washington. Bankrupt obtained a house there, by signing a lease with option to purchase. The referee found as a fact that bankrupt resided there continuously from July, 1964, and, at all times pertinent to the case, intended to make this home his and his family's permanent place of residence.

Payments and correspondence from bankrupt to appellant after July showed bankrupt's address as P.O. Box 1093, Federal Way, Washington. It appears that Auburn and Federal Way are adjacent communities within King County. Sometime in September of 1964, bankrupt called appellant's credit manager to discuss payments on the car. For about two weeks, bankrupt had a telephone listing but then changed to an unlisted number.

Bankrupt relicensed the car in Oregon in 1965, giving his old Portland address, to obtain the lower Oregon excise tax. Bankrupt used the car almost exclusively within Washington, after his move to that state, to promote a plywood venture during 1964 and 1965. While on business, he took the car once into Idaho and two or three times into Oregon. He also made two other trips to Oregon in it because of the illness and death of his mother-in-law. His son also used the car once on a trip to Oregon to look for work, after the date of bankruptcy.

Appellant's credit manager, one Oldfield, attempted to contact bankrupt in Washington, but bankrupt's phone had been disconnected. Oldfield then contacted bankrupt's employer to see if an overdue payment on the car could be obtained. But Oldfield did not ask the employer where the car was located or what bankrupt's residence address was. Nor did he ever retain anyone to repossess the car. Oldfield contacted the Oregon Department of Motor Vehicles only to learn that the car was registered at the old Portland address. The only more definite address that Oldfield ever obtained was that of bankrupt's employer, which he obtained on January 15, 1965, about three weeks prior to bankruptcy.

Bankruptcy was declared on February 2, 1965. At the time of bankruptcy, the car was worth $2200 and the balance owed was $2900.

It was stipulated by the parties that the retail installment contract covering the automobile in question was never recorded or filed in Washington.

On March 19, 1965, the appellee procured an order directed to appellant to show cause why the contract should not be declared null and void as to appellee, and why appellee should not be allowed to sell the car free and clear of all liens, including the claims of appellant. On May 20, 1965, the referee in bankruptcy entered an order declaring said contract null and void as to appellee and allowing appellee to dispose of the car free and clear of any liens. On appellant's petition for review, the District Court affirmed the referee's order and denied the petition. B & G then appealed.

■ The general rule in Washington regarding out-of-state conditional sale contracts is that they are valid and enforceable in Washington if they are valid in the place of making. "The contract, being a valid contract of conditional sale under the laws of the state of South Dakota, and having been executed by the parties to be carried out in that state, must be held to be valid and enforceable within the state of Washington." G. A. Campbell Co. v. Frets, 167 Wash. 576, 9 P.2d 1082, 1084 (1932).

However, the Washington courts recognize an important exception to this general rule of comity. This exception is based on Washington public policy and is fully explained in Sound Industrial Loan Co. v. Frank Allyn, Inc., 149 Wash. 123, 270 P. 295 (1928):

> "If the contract of sale is made in one jurisdiction, and consent is given to the removal of the property contracted to be sold into another jurisdiction, the contract is invalid as to the creditors of the vendee and purchasers of the property in good faith of the latter jurisdiction, unless its laws relative to such contracts have

been complied with; this on the principle that it is against the policy of the state to permit its laws to be knowingly violated. It must follow, we think, from the same principle, that if property sold under a contract of conditional sale in one jurisdiction is removed to another without the consent of the seller, and the seller, after learning of its whereabouts, delays unreasonably to comply with the laws of the latter jurisdiction, or delays unreasonably in asserting his right to the possession of the property, the contract becomes invalid as against the creditors of the vendee in the contract and subsequent purchasers of the property from the vendee." 270 P. at 297.

A similar statement of this principle is found in Isaacs v. Mack Motor Truck Corp., 50 Wash.2d 325, 311 P.2d 663 (1957).

"Where personal property, subject to a valid chattel mortgage executed in another state, is removed to this state, the lien of the mortgagee will be superior to that of an attaching creditor of the mortgagor in this state, for goods or services rendered without notice of the chattel mortgage, *only* if the mortgaged property is removed without the knowledge or consent of the mortgagee and he, after learning of its whereabouts, complies with our filing laws or proceeds to assert his rights under the mortgage, without unreasonable delay." 311 P.2d at 666.

Here, the contract was executed in Oregon, yet the bankrupt took the car to Washington, without the consent of appellant. Although there is no Washington Supreme Court decision outlining the circumstances which would constitute removal, those guidelines were set out in an opinion of this court in the case of In Re Duncan, 264 F.2d 460 (9th Cir. 1959).

"It is our opinion that in order to constitute a 'removal' of a mortgaged motor vehicle to the State of Washington there must be more than a mere change of location of the motor vehicle. There must be more than casual, temporary, intermittent or transitory presence of the motor vehicle in the State of Washington. * * * 'Removal' has a connotation of permanency, a connotation of reestablishment." 264 F.2d at 466.

■■ Bankrupt's taking and keeping of the Buick in Washington could hardly be called transitory. His move to Washington was not temporary, for he had leased a house, with option to purchase, and resided in Washington at all times after he departed Oregon. The car itself was taken out of the state of Washington only on infrequent occasions. The referee found that appellant knew from and after August, 1964, that bankrupt was residing in King County, Washington, and that he had the car with him. It is not necessary to set out in more detail the facts supporting this finding. Suffice it to say that on review we hold that this finding was not clearly erroneous. See In Re Duncan, supra, at 467. It is supported by substantial evidence in the record. The car was removed to Washington within the meaning of the exception noted in the *Allyn* case above and within the meaning given "removal" in *Duncan*.[1]

■ The question then is whether appellant delayed unreasonably in complying with the laws of Washington or in asserting its rights under the contract. Washington law requires the filing of conditional sales contracts, such as the one in this case, in order for the conditional vendor to retain his security interest against, *inter alia,* subsequent creditors, regardless of whether those creditors assert a lien on the subject

---

1. Appellant attempts to use *Duncan* as precedent for the proposition that there was no removal in the present case. *Duncan* held that the property there had not been removed. But the facts in *Duncan* are distinguishable on this point because there, the terminal out of which the truck was working was in the state where the contract was formed, and the registered owner parked it at his home out-of-state only occasionally between trips.

matter of the conditional sale. The applicable provision of the law of Washington is R.C.W. 63.12.010 (Supp. 1965), which reads in pertinent part:

"All conditional sales of personal property, or leases thereof, containing a conditional right to purchase, where the property is placed in the possession of the vendee, shall be absolute as to all bona fide purchasers, pledgees, mortgagees, encumbrancers and subsequent creditors, whether or not such creditors have or claim a lien upon such property, unless within twenty days after the taking of possession by the vendee, a memorandum of such sale, stating its terms and conditions, signed by the vendor and vendee, * * * shall be filed in the auditor's office of the county, wherein, at the date of the vendee's taking possession of the property, the vendee resides."

It was stipulated by the parties that appellant never complied with this statute. Appellant learned in September of 1964 that bankrupt had moved to Washington. While it had only a post office box number for bankrupt's address, it took no steps whatever to file the contract in the county of that address. As it turned out, this would have protected appellant's security in the car, as bankrupt was actually residing in the same county and keeping the car there. Moreover, although appellant was concerned about receiving some past due payments from bankrupt, and contacted bankrupt's employer about these, appellant never sought to enforce its right to possession of the car.

It is true, as appellant points out, that in the *Allyn* case, there were creditors who would have suffered a financial loss as a result of the vendor's unreasonable delay in enforcing the contract. However, we do not read that to be the rationale of the decision. In *Allyn* the court was not requiring a showing of potential loss to subsequent creditors caused by the conditional vendor's unreasonable delay. The court mentions that aspect of the case only at the very end of the opinion and briefly affirms the lower court holding that the vendor delayed unreasonably. Furthermore, in the present case, there are creditors, other than appellant, who extended credit subsequent to the execution of bankrupt's contract with appellant, and they certainly stand to lose financially if appellant is able to retain the car despite the unreasonable delay in complying with the Washington statute.

Affirmed.